United States District Court
Southern District of Texas
**ENTERED**
February 03, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SCOTTIE LEVIAS AND URSULA LEVIAS, § § § § | |
| Plaintiffs, § | CIVIL ACTION NO. 24-3164 |
| v. § § | |
| UNITED STATES OF AMERICA, § § | |
| Defendant. § § § | |

**MEMORANDUM AND OPINION**

Scottie Levias and his wife, Ursula Levias, sue the United States, alleging that the Michael E. DeBakey VA Medical Center ("the VA") was negligent in treating Mr. Levias for renal failure and kidney disease between 2012 and 2020. The Leviases allege that the government was negligent in several ways, including by: prescribing NSAIDs for years to Mr. Levias in unsafe quantities; failing to timely and properly diagnose Mr. Levias's kidney disease; and failing to timely and properly provide nephrology consults for Mr. Levias. (*Id*. at 6.1).

The government moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Rule 56. (Docket Entry No. 9). The government asserts that Mr. Levias's allegations related to the treatment of his renal illness were not presented administratively within the two-year statute of limitations required by the Federal Tort Claims Act, 28 U.S.C. § 2401(b). Based on the pleadings, the motion, and the applicable law, the court grants the motion to dismiss the claims against the government. The reasons for this ruling are explained below.

**I.     Background**

Mr. Levias, a veteran, asserts that he was seen for several years at the VA for chronic pain and diabetes. (Docket Entry No. 1 ¶ 5.1). His complaint chronicles a lengthy account of his medical history, which is summarized in part here.

Mr. Levias alleges that he first began to exhibit signs of chronic kidney disease in January 2012. (*Id*.). He alleges that from 2012 to 2017, healthcare providers at the VA documented his increasingly abnormal renal function and took steps to modify the dosage of his prescribed medications. (*Id*. ¶ 5.1, 5.8-5.10). Mr. Levias was diagnosed with chronic renal disease in March 2017. (*Id*. ¶ 5.10). He alleges that "the VA did not just ignore [his] early kidney disease," but also "made it markedly worse over the next eight years by prescribing several renal[ly] toxic medications" to him over an eight-year period from 2020-2022. (*Id*.). Mr. Levias also asserts that although the FDA approved a medical breakthrough in kidney disease treatment in 2019 that could have stabilized, and possibly reversed, Mr. Levias's kidney disease, the VA did not offer him that treatment option. (*Id*.). Mr. Levias asserts that as a result, he suffers from end-stage renal failure and Stage V chronic kidney disease. (*Id*.). He will require dialysis and significant medical care for the rest of his life. (*Id*.).

In September 2017, Mr. Levias was hospitalized for dehydration associated with diabetes. He was told that he was suffering either "acute kidney injury" or "stage III chronic kidney disease." (*Id*. ¶¶ 5.11-5.12). In October 2017, his doctor referred him for a renal consult with the VA. (*Id*. ¶ 5.14). Mr. Levias alleges that the VA sent him a letter with scheduling information at the end of October 2017, and called him once to schedule this appointment, but did not reach him. (*Id*.). Mr. Levias alleges that the VA did not again attempt to reach him to schedule the consult. (*Id*.). By early 2018, Mr. Levias's doctors recommended that he stop taking all medications that might be negatively affecting his renal function. (*Id*. ¶¶ 5.13-5.15). The parties dispute whether, in light of

2

this recommendation, he was taken off of all NSAIDs or other renally toxic medications. (See Docket Entry No. 12 at 12). In April 2018, Mr. Levias's doctor referred him again for a renal consult at the VA, which Mr. Levias scheduled for May 24, 2018. (Docket Entry No. 1 ¶ 5.16).

Mr. Levias alleges that he saw a nephrologist, Dr. Naveenathan, at the VA, in May 2018 and again in September 2018. (*Id*. ¶¶ 5.18, 5.20). Between May 2018 and June 2019, he had regular appointments with various doctors at the VA. (*Id*. ¶ 5.24). In July 2019, Mr. Levias saw Dr. Navaneethan, who diagnosed Mr. Levias with Stage III to Stage IV Chronic Kidney Disease. (*Id*. ¶ 5.29). In February 2020, Mr. Levias was diagnosed with Stage IV Chronic Kidney Disease by a nephrologist and instructed to avoid all NSAID medications. (*Id*. ¶ 5.32). Mr. Levias alleges that in August 2020, he "complained by telephone to a VA social worker Myia Barton about the lack of treatment of his renal failure" since he had not "heard from renal in over 7 weeks, [he] was still waiting for a biopsy, and he was continuing to get sick." (*Id*. ¶ 5.43).

On January 26, 2021, the Leviases submitted a Form SF-95, which is a claim for damage, injury, or death caused by the federal government. (*Id*. ¶ 4.1). The Leviases submitted the form to the Veterans Administration Medical Center. (*Id*.). The Form SF-95 complained that VA physicians and staff were "negligent in failing to timely perform emergency lumbar decompression surgery after the MRI identification of L4-L5 cauda equina nerve root compression on May 11, 2018." (Docket Entry No. 9-3 at 3). On January 24, 2023, the VA denied the administrative claim via certified mail. (Docket Entry No. 1 ¶ 4.1; Docket Entry No. 9-4).

The Leviases requested reconsideration of the denial on July 12, 2023. (*Id*.). In addition to the request for reconsideration, the Leviases also submitted what they referred to as "the amended claim[s]." (*Id*. ¶¶ 4.2, 4.3). The July 2023 Form SF-95 submitted by Mr. Levias stated that the basis for his claim was that "beginning on or about February 16, 2012 and continuing

3

through 2018 into 2020," the VA provided "substandard medical care," which included failing to "properly treat Mr. Levias's pain, negligently overprescribing NSAIDs, causing Mr. Levias to suffer total renal failure, failing to timely diagnose and treat renal failure, and failing to timely diagnose and treat cauda equina syndrome, causing Mr. Levias to suffer permanent, disabling kidney damage and neurological damage that he will endure for the rest of his life." (Docket Entry No. 9-5).

The VA issued a final denial of the cauda equina syndrome claims on March 13, 2024. (Docket Entry No 9-6). In the same letter, the VA also issued a final denial of the July 2023 renal failure claim as barred by the statute of limitations, because the VA found that "Mr. Levias was aware of his renal injury by September 2017" but his claim "was received on July 12, 2023, almost four years after the claim accrued." (*Id.*).

The Leviases filed this suit on August 23, 2024. (Docket Entry No. 1).

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Courts may also consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt.*, L.L.C., 847 F.3d 302, 307 n. 24 (5th Cir. 2017) (quotations omitted).

### III. Analysis

The FTCA authorizes claims against the United States that arise from "the negligent or wrongful act or omission of any employee of [a federal] agency while acting within the scope of his office or employment." 28 U.S.C. § 2672. "The Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." *Levin v. United States*, 133 S. Ct. 1224, 1228 (2013) (citing 28

U.S.C. § 1346(b)(1)). Under the FTCA, the United States is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Under the FTCA, no action may be brought against the United States unless the claimant first presents the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). The FTCA states that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401; *see also Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) ("Section 2401(b) bars a tort action against the federal government unless the claim is first presented to the appropriate federal agency 'within two years after such claim accrues.'") (citing *United States v. Kubrick*, 444 U.S. 111, 113, 100 S. Ct. 352, 62 L.Ed.2d 259 (1979))).

In *Kubrick*, the Supreme Court established that the FTCA's two-year statute of limitations begins to run when the plaintiff has the information necessary to discover both the existence of the plaintiff's injury as well as its cause. *Kubrick*, 444 U.S. at 120. "A plaintiff is effectively put on notice of the wrong when she knows, or in the exercise of reasonable diligence should have discovered the cause of the injury." *Collins v. U.S. Army Carl R. Darnall Med. Ctr*., 2010 U.S. Dist. LEXIS 95504, at *12 (E.D. Tex. Aug. 18, 2010) (alterations adopted and internal quotations omitted) (citing *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995)).

The government argues that Mr. Levias's renal failure claims "accrued in 2017 or early 2018 when [the Leviases] learned Mr. Levias[] was diagnosed with acute kidney injury and stage III chronic kidney disease, referred him to the renal clinic, discontinued his use of NSAIDs and

6

stopped his Metformin 'because of his abnormal renal function.'" (Docket Entry No. 9 at 9-10; citing Docket Entry No. 1 ¶¶ 5.12-5.15). The government argues that Mr. Levias knew or should have known of his abnormal renal function and injury as early as 2017, and no later than 2020. The government cites the following reasons: Mr. Levias had full access to his medical records during the course of his treatment at the VA; he had access to clinic and administrative representatives who could help him learn and understand his diagnosis and treatments; and in November 23, 2020, he obtained a subset of his records pertaining to his renal treatment, procedures, labs, and medications from 2017 until the present. (*Id*. at 8). The government asserts that "[w]hether using an accrual date of March 2017, November 2020, or some date in between, [Mr. Levias's] SF-95, submitted on July 12, 2023, was at least seven months late. Accordingly, the claims set forth in the July 12, 2023 SF-95 are barred pursuant to 28 U.S.C. § 2401(b)." (*Id*. at 12).

The Leviases assert that the July 2023 Form SF-95 did not add a new claim, but rather amended the claims asserted in the January 2021 Form SF-95. To support this contention, the Leviases assert that under federal law, once a patient files an administrative claim, it can be amended at any time and for any reason before filing suit. (Docket Entry No. 12 at 17). Because of this, the Leviases assert that they provided the government with timely notice of their claims, including the renal failure claim, in the January 2021 Form SF-95. (*Id*. at 17-18). The Leviases argue that once the cauda equina syndrome claim was asserted in the January 2021 Form SF-95, the burden was on the government to investigate "theories of liability other than those specifically enumerated" that could "be properly considered to be part of the claim." (*Id*. at 20-21). The Leviases argue that they "had already tolled the statute of limitations for the [renal failure] claim

7

when they presented a medical malpractice administrative claim concerning symptoms of kidney disease on January 26, 2021." (Docket Entry No. 12 at 27).

The pleading allegations and the record show that Mr. Levias knew that he was suffering from kidney-related illnesses no later than August 2020, when he "complained by telephone to a VA social worker Myia Barton about the lack of treatment of his renal failure," noting that he and his wife not "heard from renal in over 7 weeks, they were still awaiting a biopsy, and he was continuing to get sick." (Docket Entry No. 1 ¶ 5.43). The Leviases allege that during this same call, "Mrs. Levias also expressed that she was 'highly upset with his treatment for renal failure' and felt like treatment wasn't being performed to match [Mr. Levias's] needs." (*Id*. ¶ 5.44). On the next day, August 4, 2020, Mr. Levias "reiterated [in a telephone call to a VA nurse] that he was dissatisfied with his treatment of renal failure." (*Id.* ¶ 5.45). These allegations and record evidence demonstrate that by August 2020, the Leviases knew of "the existence and cause of their injuries." *Kubrick*, 444 U.S. at 120. At that point, the Leviases's claims against the government began to accrue.

The Leviases assert that the government was on notice of their renal injury claim because the government had a duty to investigate all other potential causes of the symptoms that Mr. Levias first complained about. But the January 2021 Form SF-95 asserts an entirely different injury than the July 2023 Form SF-95. Under Fifth Circuit precedent, "the purpose of the FTCA's notice-of-claim requirement will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant*." Pleasant v. United States ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 449, (5th Cir. 2014) (quoting reference omitted).

8

The January 2021 Form SF-95 makes no mention of kidney damage, renal failure, or negligence by the VA resulting in kidney damage. As the government asserts, and the court agrees, the January 2021 Form SF-95 fails to assert the existence of a renal injury or the VA's negligence as to such an injury. The January 2021 Form SF-95 alleges only negligence as to the VA's failure to timely diagnose, treat, and otherwise address Mr. Levias's cauda equina syndrome. (Docket Entry No. 9-3 at 3). While the January 2021 Form SF-95 mentions certain symptoms associated with kidney disease, such as hesitancy and nocturia, those symptoms are associated with other medical conditions as well, including cauda equina syndrome, and are not exclusive to kidney disease. The July 2023 Form SF-95 states that the injuries suffered by Mr. Levias stem from "the VA over-prescribing years of renal[ly] toxic medication with no follow up or concerns as to Mr. Levias's kidney damage." (Docket Entry No. 9-5 at 16). That is a separate injury from the claim of a failure to properly treat cauda equina syndrome.

The Leviases argue that the statute of limitations on their renal failure claim was tolled during the pendency of the reconsideration of the cauda equina syndrome claim. In essence, the Leviases assert that while Mr. Levias presented his cauda equina syndrome claim to the VA in 2021, the statute of limitations for his renal failure claim was tolled until after he received a final denial of his cauda equina syndrome claim, which was in 2024. But that argument is predicated on the notion that the renal injury claim was an "amendment" of the earlier January 2021 claim asserting damage related to the misdiagnosis of cauda equina syndrome.

It is true that under 38 C.F.R. § 14.604, a claim that has already been administratively presented "may be amended by the claimant at any time prior to final Department of Veterans Affairs action or prior to the exercise of the claimant's option," without being barred by the applicable statute of limitations. But this provision applies only to claims that have already been

9

raised and which the claimant seeks to amend, not new claims arising out of separate, or distinct, injuries.

Finally, the Leviases assert that the FTCA's statute of limitations tolls when there is continuing medical treatment, even if the plaintiff discovered the injury very shortly after the initial tortious conduct. They cite a line of cases that they assert "stand[] for the proposition that if your doctor hasn't figured out what's wrong with you, the court will not punish a patient for knowing either." (Docket Entry No. 30 at 33). Under the continuous treatment doctrine recognized in the Second Circuit, "where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment." *Ulrich v. Veterans Admin. Hospital*, 853 F.2d 1078, 1080 (5th Cir. 1988). But the Fifth Circuit has not adopted the continuous treatment doctrine in the context of of medical malpractice claims. *See Sweatt v. United States,* 2017 U.S. Dist. LEXIS 124176, at *13 (N.D. Miss. Aug. 7, 2017); *Madrid v. United States*, 2023 U.S. Dist. LEXIS 215844, at *16 n. 11 (N.D. Tex. Dec. 5, 2023). District courts in this circuit have been even more hesitant to apply it when, as here, the medical malpractice claims "are predicated on a series of alleged distinct negligent acts committed by various physicians working at the VAMC." *Madrid*, 2023 U.S. Dist. LEXIS 215844 at *16.

The court is deeply sympathetic to Mr. Levias's medical condition and his struggles to receive appropriate treatment. But "limitations on the FTCA's waiver of sovereign immunity must be strictly construed in favor of the United States." *Broussard v. United States*, 52 F.4th 227, 231 (5th Cir. 2022). The Leviases should have filed a Form SF-95 by August 2022 to timely file their administrative claim regarding renal injury. Instead, the Leviases filed their Form SF-95 in July

2023, almost a year too late. The Leviases's failure to timely exhaust their administrative remedies as to the claims of renal failure precludes their claim.

IV.     **Conclusion**

The motion to dismiss, (Docket Entry No. 9), is granted. The claims are dismissed with prejudice, as amendment would be futile. The court will separately enter final judgment.

SIGNED on February 3, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge